UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EARL REESE | ) | |
| WALTER CHRUBY | ) | |
| STEPHEN OROSZ, JR. | ) | |
| MICHAEL VEON | ) | |
| LARRY BAGEANT | ) | |
| LUANN BOUVIER | ) | |
| WESLEY HARPER | ) | Civil Action No._____ |
| ROBERT HOLMES | ) | |
| STEPHEN AND EMILY OROSZ | ) | |
| CARL PETERKIN | ) | |
| STEPHANIE VEON | ) | |
| LEWIS BROOKS | ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| individually and on behalf of | ) | **JURY TRIAL DEMANDED** |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GLOBAL TEL*LINK CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**COMPLAINT**

1.      Plaintiffs, individually and on behalf of all others similarly situated, bring this

class action under the Federal Communications Act, 47 U.S.C. §§ 201, 206, 207 and 276, *et seq*.,

(the "FCA"), the common law of unjust enrichment and the Pennsylvania Unfair Trade Practices

and Consumer Protection Law, (UTPCPL) 73 P.S. § 201-1 et seq. seeking damages, costs of suit,

and other relief, against Defendant Global Tel*Link Corporation ("GTL")  for its  unjust,

unreasonable, unfair and deceptive conduct from January 1, 2000, through the present (the

"Class Period"). During the Class Period, Defendant has charged, and in many cases continues to

charge, exorbitant rates and fees-up to 100 times normal market rates for *intrastate telephone*

*calls* to and from inmates pursuant to exclusive contracts with correctional facilities throughout the United States (including Pennsylvania).[1]

2.      The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

## PARTIES

3.      Plaintiff Earl Reese is a citizen of Pennsylvania and is incarcerated at Philadelphia House of Corrections.  He has been incarcerated since 2000, serving time at the Philadelphia House of Corrections, SCI-Camp Hill and SCI- Hackville.  He has been and is being forced to pay Defendant GTL unjust, unreasonable and unfair amounts for intrastate phone calls.  Plaintiff Reese is willing and able to serve as a class representative.

4.      Plaintiff Walter Chruby is a citizen of Pennsylvania and is incarcerated at SCI Laurel Highlands.  Plaintiff Chruby has been incarcerated since 1995, serving his time at various facilities including SCI-Camp Hill, SCI – Coal Township, SCI-Pittsburgh, and SCI – Laurel Highlands.  He has been and is being forced to pay Defendant GTL unjust, unreasonable and unfair amounts for intrastate phone calls.  Plaintiff Chruby is willing and able to serve as a class representative.

5.      Plaintiff Stephen Orosz, Jr. is a citizen of Pennsylvania and is incarcerated at SCI Laurel Highlands.  Plaintiff Orosz, Jr. has been incarcerated since 1985.  He has been and is being forced to pay Defendant GTL unjust, unreasonable and unfair amounts for intrastate phone calls.  Plaintiff Orosz is willing and able to serve as a class representative.

---

[1]  At the outset, Plaintiffs note that this complaint is limited to charges and fees for intrastate telephone calls, and does not include the charges and fees charged for interstate telephone calls.

6.      Plaintiff Michael Veon is a citizen of Pennsylvania and is incarcerated at SCI Laurel Highlands. Plaintiff Michael Veon has been incarcerated since 2010. He has been and is being forced to pay Defendant GTL unjust, unreasonable and unfair amounts for intrastate phone calls. Plaintiff Veon is willing and able to serve as a class representative.

7.      Plaintiff Larry Bageant is a citizen of Pennsylvania and is incarcerated at SCI Laurel Highlands. Plaintiff Bageant has been incarcerated for eleven years. He has been and is being forced to pay Defendant GTL unjust, unreasonable and unfair amounts for intrastate phone calls. Plaintiff Bageant is willing and able to serve as a class representative.

8.      Plaintiff Luann Bouvier resides at 101 Highland Avenue, East Pittsburgh, Pennsylvania PA 15112. Plaintiff Bouvier has an incarcerated family member, and has been and is forced to pay Defendant GTL unjust, unreasonable and unfair amounts for intrastate phone calls. Plaintiff Bouvier is willing and able to serve as a class representative.

9.      Plaintiff Wesley Harper is a resident of Pennsylvania and is incarcerated at SCI Laurel Highlands. Plaintiff Harper has been incarcerated since 1969. He has served his time at Smithville as well as SCI-Laurel Highlands. He has been and is being forced to pay Defendant GTL unjust, unreasonable and unfair amounts for intrastate phone calls. Plaintiff Harper is willing and able to serve as a class representative.

10.     Plaintiff Robert Holmes is a resident of Pennsylvania and is incarcerated at SCI Laurel Highlands. Plaintiff Holmes has been incarcerated since 1995. He has served his time at Crescent as well as SCI-Laurel Highlands. He has been and is being forced to pay Defendant GTL unjust, unreasonable and unfair amounts for intrastate phone calls. Plaintiff Holmes is willing and able to serve as a class representative.

11.     Plaintiffs Stephen and Emily Orosz reside at 243 Highland Avenue, East Pittsburgh, Pennsylvania, PA 15112. The Orosz Plaintiffs have a family member incarcerated at SCI Laurel Highlands, and have been and are being forced to pay Defendant GTL unjust, unreasonable and unfair amounts for intrastate phone calls. They are willing and able to serve as class representatives.

12.     Plaintiff Carl Peterkin is a resident of Pennsylvania and is incarcerated at SCI Laurel Highlands. Plaintiff Peterkin has been incarcerated since 2005, and has served his time at Rockville as well as SCI-Laurel Highlands. He has been and is being forced to pay Defendant GTL unjust, unreasonable, unfair and deceptive amounts for intrastate phone calls. Plaintiff Peterkin is willing and able to serve as a class representative.

13.     Plaintiff Stefanie Veon resides at 1617 Concordia Street, Pittsburgh, PA 15210. She has a family member incarcerated at SCI Laurel Highlands, and has been and is being forced to pay Defendant GTL unjust, unreasonable, unfair and deceptive amounts for intrastate phone calls. Plaintiff Veon is willing and able to serve as a class representative.

14.     Plaintiff Lewis Brooks is a citizen of Pennsylvania and is incarcerated at SCI Fayette. He has been incarcerated since 2012, serving time at CFCF Prison in Philadelphia, SCI-Graterford, SCI-Camp Hill and SCI-Fayette. He has been and is being forced to pay Defendant GTL unjust, unreasonable and unfair amounts for intrastate phone calls. Plaintiff Brooks is willing and able to serve as a class representative.

15.     Defendant GTL is owned, in part, by the private equity firm American Securities LLC and operates through wholly owned subsidiaries to provide inmate telephone services throughout the United States. GTL's corporate headquarters is located at 12021 Sunset Hills Road, Suite 100, Reston, Virginia 20190. Operating subsidiaries of GTL during the Class

Period include, among others: Inmate Telephone Services ("ITS"), a Delaware corporation headquartered in Mobile, Alabama; DSI-ITI, LLC ("DSI-ITI"), a Delaware limited liability company headquartered in Altoona, Pennsylvania and the successor-in-interest to ITS' contracts as of June 20, 2010; Value-Added Communications, Inc. ("VAC"), a Delaware corporation headquartered in Plano, Texas; and Public Communications Services, Inc. ("PCS"), a California corporation headquartered in Los Angeles, California.

16.     GTL and its subsidiaries serve over 2,200 correctional facilities and 1.1 million inmates in forty-eight states. GTL and its subsidiaries provide inmate telephone services pursuant to contracts with twenty-nine states (including Pennsylvania) and contracts with over 800 counties (including in Pennsylvania). GTL also provides inmate telephone services to the Federal Bureau of Prisons.

## JURISDICTION AND VENUE

17.     Jurisdiction is proper in this Court pursuant to 28 U.S. C. § 1331 because this matter involves a federal question, *i.e.,* whether GTL violated 47 U.S.C. §§ 201 and 276, *et seq*. The Court has supplemental jurisdiction over Plaintiffs' state law claims because they arise from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try both them and the claim involving a federal question in one judicial proceeding.

18.     Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million, exclusive of interest and costs, and at least one Class Member is a citizen of a state other than that of Defendant.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that Defendant transacts substantial business within, and is subject to personal jurisdiction in, this District and thus "resides" in this District. Venue is also proper in this District pursuant to 28 U.S.C. §

1391(b) because a substantial part of the events giving rise to the claims asserted herein took

place in this District.

## DEFENDANTS' UNLAWFUL CONDUCT

20.     Inmates are literally a captive market for GTL, which provides intrastate pay

telephone services in prisons, jails, and other correctional facilities. As noted by the FCC, there

are no competitive market forces to constrain the prices set by GTL.[2]

21.     Defendant GTL has secured for itself the right to provide intrastate telephone

services to hundreds of thousands of inmates through exclusive contracts with thousands of

correctional facilities. As a result of the monopolies created by these exclusive contracts, GTL

faces little or no market competition to challenge increasing intrastate telephone rates.[3]

22.     In return for this monopoly power, GTL provided kickbacks, masqueraded as

"site commissions," to the contracting correctional facilities, including those in Pennsylvania.

As a result of the absence of competition, "[f]amilies of incarcerated individuals often pay

significantly more to receive a single 15-minute call from prison than for their basic monthly

phone service."[4]

23.     The market rates for competitively priced prepaid calling cards are approximately

$0.01 to $0.02 per minute for calls within the United States. Similarly, prepaid calling card rates

---

[2]  *See In re Rates for Interstate Inmate Calling Servs.*, 28 FCC Rcd. 14107, 14129 (F.C.C. Sept. 26, 2013) ("*Interstate Inmate Calling Servs. I*").

[3]  *See Securus Techs., Inc. v. Federal Communications Commission*, No. 13-1280, Dkt. No. 1470786, p.3 (D.C. Cir. filed Dec. 16, 2013) (the "FCC Opp.") (stating that "each provider is a monopoly in a given facility").

[4]  *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14130.

for international calls can be as low as $0.01 per minute, depending upon the country being called.

24.     GTL, however, charges inmates vastly more – ten times (or in some instances) more per minute[5] – for intrastate calls within the United States, not including unjust, unreasonable, unfair and deceptive per call connection fees.

25.     Illustrating the unreasonableness of the intrastate rates it charges, GTL purchases minutes for calls terminating within the United States from connection carriers for less than a penny per minute.  Yet GTL resells these minutes at more than 100 times their cost to Plaintiffs and the Class.

26.     Further demonstrating how it takes advantage of these exclusive dealing contracts to overcharge inmates, GTL "charge[s] widely varying rates in the different facilities they serve, notwithstanding their ability to share the costs of serving multiple facilities using centralized call routing and management and security platforms."[6]

27.     Payment of kickbacks by inmate telephone service providers is substantial, with reports estimating that kickbacks paid to correctional facilities exceed $124 million per year.[7]

28.     In addition, Defendant GTL imposed (and imposes) unnecessary and unconscionable fees and charges on accounts used for inmate telephone calls.   Reasonable

---

[5] *See* John E. Dannenberg and Alex Friedmann, *FCC Order Heralds Hope For Reform of Prison Phone Industry,* Chart B- Intrastate ICS Rates, InterLATA Rates (2012-2013), Prison Legal News, Vol. 24, No 12 (December 2013) available at www.prisonlegalnews.org/media/issues/12pln13.pdf (visited Apr. 23, 2015).

[6] *Interstate Inmate Calling Servs. I,* 28 FCC Rcd. at 14126.

[7] *FCC Order Heralds Hope for Reform of Prison Phone Industry*, *supra*. note 4, at Chart D.

discovery will show that Defendant GTL refused to refund amounts not expended on telephone calls, and imposed myriad fees and charges that lacked any relationship to GTL's costs.

29.     During rulemaking proceedings, the Federal Communications Commission (the "FCC") looked at whether interstate charges were "unreasonably high, unfair, and far in excess of the cost of providing service."[8]  The FCC concluded that they were, and that GTL and similar companies "exploited [their] economic position by charging rates for interstate calls greatly exceeding the cost of providing service, in direct violation of the requirements of Sections 201 and 276 of the [FCA] that those rates be just, reasonable, and fair."[9]  Likewise the FCC has concluded that "[they] believe the same legal and policy concerns identified in the Order apply equally with regard to high intrastate rates."[10]

30.     More particularly, during rulemaking proceedings regarding the rates and fees charged to inmates, the FCC concluded that:

- Under existing law, commission payments to correctional facilities are profit-sharing kickback arrangements and "are not a . . . category of . . . costs" recoverable from end-users in the rates charged for interstate telephone calls. *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14135-37.

- Because correctional facilities grant the monopoly franchise partly on the basis of the commission payment offered, "competition" among providers produces increased commission payments and higher end-user charges. *See Id.* at 14129.

- As a result, inmate telephone rates have "inflict[ed] substantial and clear harm on the general public (and not merely on private interests)" and must be rejected under existing legal precedent. *Interstate Inmate Calling Servs. II,* 28 FCC Rcd. at 15938.

---

[8]  *In re Rates for Interstate Inmate Calling Servs.*, 40, 15929 (F.C.C. Nov. 21, 2013) ("*Interstate Inmate Calling Servs. II*").

[9]  FCC Opp., at p. 1.

[10]  *Interstate Inmate Calling Servs. I,* 28 FCC Rcd. at 14174.

- With regard to certain per call charges, "[t]he record indicates that these per call charges are often extremely high and therefore, unjust, unreasonable and unfair for a number of reasons." *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14154- 55.

- Thus, "for many years, interstate [inmate telephone service] rates have been unreasonably high, unfair, and far in excess of the cost of providing service." *Interstate Inmate Calling Servs. II*, 28 FCC Rcd. at 15929-30 (emphasis added).

31.     As more specifically relates to intrastate rates, the FCC has stated that:

- "[W]e conclude that competition and market forces have failed to ensure just, reasonable, and fair interstate ICS rates, and, for the same reasons, we tentatively conclude that the same failure has occurred for intrastate ICS rates as well." *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14174- 75.

- "For the same reasons we found that site commission payments are not part of the cost of providing interstate ICS, we tentatively conclude that site commissions should not be recoverable through intrastate rates[.]" *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14175.

32.     As demonstrated above, the FCC has unequivocally determined that interstate ICS providers have, for many years, violated the FCA by incorporating commission payments and other unjust and unreasonable fees and costs into its charges for interstate calls.  As the ICS Orders expressly reflects, the same analysis applies to the cost structure utilized for intrastate calls.[11]

33.     Although the FCC has not yet issued final rulemaking governing intrastate calls, as made clear by the  FCC, the same reasoning and expertise as was applied by the FCC to interstate calls applies to intrastate calls as Defendant incorporated the kickbacks into their cost structures for intrastate charges in the same fashion as the interstate calls.[12]

---

[11]  *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14173-78.

[12]  *FCC Order Heralds Hope for Reform of Prison Phone Industry*, *supra*. note 4

34.    Beginning by at least 1998, GTL has known that it was unlawful to charge intrastate rates that violated Sections 201 and 276 of the FCA.  In 1998, the FCC determined that inmate telephone service rates "must conform to the just and reasonable requirements of Section 201."[13]

35.    Accordingly, the FCC's September 2013 and November 2013 orders do not create a new obligation on GTL; rather, they simply confirm Defendant's longstanding legal obligations – obligations they violated throughout the Class Period.

36.    As a result of GTL's imposition of exorbitant, unfair, unjust and unreasonable intrastate charges for inmate telephone services during the Class Period and Plaintiffs and members of the Class have been damaged.

**TOLLING**

37.    In 2000, a class action complaint was brought against several inmate telephone service providers alleging violations of the FCA based on some of the conduct alleged herein.[14] Additionally, current and former inmates petitioned the FCC as early as 2003 to address inmate telephone rates.

38.    As a result of the ongoing FCC review of the rates, some courts have dismissed complaints alleging violations of the FCA, including the one filed in 2000, on the basis of

---

[13]  *See Billed Party Preference For Interlata 0+ Calls*, 13 FCC Rcd. 6122, 6156 (FCC Jan. 29, 1998) (finding that inmate telephone rates "must conform to the just and reasonable requirements of Section 201").

[14]  *See Wright v. Corrections Corporation of America, et al*., No. 00-cv-0293-GK (D.D.C.).

"primary jurisdiction" and deferred judgment to the FCC, effectively staying the cases pending the FCC's final determination.[15]

39.    As noted by U.S. District Judge Gladys Kessler in 2001, "the Court expects the [FCC] to move with dispatch to conclude its ongoing proceedings so as to provide both courts and parties with meaningful analysis and guidance on these issues."[16]

40.    As alleged herein, the FCC has finally and conclusively determined that charges for ICS incorporating commissions and other unjustified amounts unrelated to costs were unjust and unreasonable in violation of the FCA – the "analysis and guidance" referenced by Judge Kessler.

41.    As noted above, a finding of liability in this action would not be a "retroactive application" of a new law or regulation because the FCC has merely clarified existing law in its recent findings that ICS providers have violated the FCA.

42.    GTL has thus been on notice since as early as 2000 that its conduct likely violated the FCA. There is no longer a risk of conflicting adjudications in private litigation given that the FCC has exercised its technical expertise and determined that the kickbacks cannot be included as reasonable costs. As a result, the claims alleged herein are ripe for disposition.

---

[15]  *See, e.g., Wright*, No. 00-cv-0293-GK, Dkt. No. 94 (D.D.C. Aug. 22, 2001) (dismissing class action complaint and concluding "the FCC is clearly in the best position to resolve the core issues in this case, namely the reasonableness of the rates charged" and noting that "[a]fter the FCC does so ... the Court will have the benefit of the agency's expert findings in addressing them").

[16]  *Id.*

## CLASS ALLEGATIONS

43.     Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to FED. R. CIV. P. 23.  Plaintiffs seek to represent a class, defined as follows:

> all persons in the United States who, at any time since 2000, have paid to use the telephone systems provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls involving a person incarcerated in any state in the United States (the "Class").

44.     Additionally Plaintiffs seek to represent a subclass defined as follows:

> all citizens of Pennsylvania who, at any time since 2000, have paid to use the telephone systems provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls involving a person incarcerated in Pennsylvania (the "Pennsylvania Sub-Class").

45.     Excluded from the Classes are any persons who paid to use the telephone systems provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls in the State of New Jersey.[17]

46.     This action is brought and properly may be maintained as a class action pursuant to the provisions of FED. R. CIV. P. 23(a)(l)-(4) and 23(b)(l), (b)(2), or (b)(3) and satisfies the requirements thereof.

47.     The members of the Class are so numerous that individual joinder of all the members is impracticable. On information and belief, there are not fewer than tens of thousands of persons who have been affected by Defendant's conduct.  The precise number of Class

---

[17]  Claims on behalf of a class of individuals making calls to or receiving calls from inmates in the State of New Jersey are currently pending against GTL and certain of its subsidiaries in existing litigation in the District of New Jersey. *See James v. Global Tel\* Link, et al*., No. 13-cv-4989 (D.N.J.).

Members and their addresses are presently unknown to Plaintiffs, but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

48.　　Common questions of law and fact exist as to the Class, as required by FED. R. CIV. P. 23(a)(2), and predominate over any questions that affect only individual Class Members within the meaning of FED. R. CIV. P. 23(b)(3). The common questions of law and fact include, but are not limited to, the following:

(a)　　whether Defendant has charged unreasonable and unjust intrastate telephone rates and fees;

(b)　　whether Defendant has charged telephone rates and fees that greatly exceed costs of providing intrastate service;

(c)　　whether Defendant has failed to fully and adequately disclose to Plaintiffs and the Class telephone rates and fees that they will be, and have been, charged when Plaintiffs and the Class make or receive intrastate telephone calls involving an incarcerated person;

(d)　　whether, through the acts and practices complained of herein, Defendant violated §201(b)  and §276 of the FCA and regulations thereunder;

(e)　　whether, through the acts and practices complained of herein, Defendant was unjustly enriched;

(f)　　whether, through the acts and practices complained of herein, Defendant violated the UTPCPL, 73 P.S. § 201-1 et seq., by engaging in deception and charging Plaintiffs unreasonable, unjust and unfair amounts for intrastate telephone calls;

(g)　　whether, through the acts and practices complained of herein, Defendant violated the UTPCPL, 73 P.S. § 201-1 et seq., by charging Plaintiffs deceptive or fraudulent fees (apart from the per minute rates); and

(h)　　whether Plaintiffs and the Class have been damaged by Defendant's acts and practices complained of herein, and if so, the measure of those damages and the nature and extent of any other relief that should be granted.

49.     Plaintiffs' claims are typical of the claims of the Class they seek to represent under FED. R. CIV. P. 23(a)(3) because Plaintiffs and the Class have been subjected to the same wrongful practices and have been damaged thereby in the same manner.

50.     Plaintiffs will fairly and adequately represent and protect the interests of the Class as required by FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representative of the Class because they have no interests that are adverse to the interests of the Class. Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

51.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and each Class Member are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for each Class Member to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

52.     In the alternative, this action is certifiable under the provisions of FED. R. CIV. P. 23(b )(1) and/or 23(b )(2) because:

> (a)     the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to

individual Class Members that would establish incompatible standards of conduct for Defendant; and

(b)    the prosecution of separate actions by individual Class Members would create a risk of adjudications as to them that would, as a practical matter, be dispositive of the interests of the other Class Members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

53.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to Class Members on a mandatory, class wide basis.

54.    Plaintiffs are aware of no difficulty that will be encountered in the management of this litigation that will preclude its maintenance as a class action.

**COUNT I**
**VIOLATION OF THE FEDERAL COMMUNICATIONS ACT,**
**47 U.S.C. § 201 AND § 276, ET SEQ.**
**(ON BEHALF OF NATIONWIDE CLASS)**

55.    Plaintiffs hereby incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

56.    Under§ 201(a) and § 276 of the FCA, Defendant is a common carrier engaged in interstate and intrastate wire communications for the purpose of furnishing such communication services.

57.    The telephone rates and fees charged by Defendant, as alleged above, are unjust, unreasonable, and unfair, in violation of § 201 (b) and/or § 276 of the FCA.

58.    Defendant's failure to make full and adequate disclosures to their customers of these charges violates 47 CFR § 64.2401 and, therefore, violates§ 201(b) and § 276 of the FCA.

59.    Defendant has not filed its rates with the FCC.

60.    As a direct and proximate result of Defendant's violations of the FCA, Plaintiffs

and the Class have been damaged in amounts to be determined at trial.

## COUNT II
## UNJUST ENRICHMENT
## (ON BEHALF OF THE PENNSYLVANIA SUB-CLASS)

61.    Plaintiffs hereby incorporate by reference all paragraphs of this Complaint as if

fully set forth herein.

62.    As a direct and proximate result of Defendant's acts and practices alleged herein,

Defendant has been unjustly enriched and has obtained money, earnings, profits, and benefits

directly from Plaintiff and the Class to which Defendant is not otherwise entitled and which it

would not have obtained but for their charging of rates, fees, and penalties that are unjust,

unreasonable, and greatly exceed market rates and costs of providing services.

63.    Defendant's practices were intentional, knowing, malicious, or done with the

intent to reap significant benefits at the expense of Plaintiffs and the Class.

64.    Defendant is not entitled to this enrichment, was prohibited from engaging in the

acts and practices that generated this enrichment by § 201(b) and/or § 276 of the FCA, and

obtained this enrichment to the detriment of Plaintiffs and the Class.

65.    Plaintiffs and the Class reasonably expected that they would only have to pay

market rates for intrastate calls and would not have to incur other charges that provide no

commensurate benefit to them.

66.    Plaintiffs and the Class have suffered, and will continue to suffer, actual damages

and injury-in the form of telephone rates and fees that exceed market rates and costs of providing

services-as a result of Defendant's unjust retention of proceeds from their acts and practices

alleged herein.

67.     Under principles of equity and justice, Defendant should be required to restore the above-described unjust enrichment to Plaintiffs and the Class in amounts to be determined at trial.

## COUNT III
### VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201-2(XXI)
### (ON BEHALF OF THE PENNSYLVANIA SUB-CLASS)

68.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

69.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Pennsylvania Class against Defendant GTL.

70.     This is a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(xxi).

71.     At all relevant times material hereto, Defendant conducted trade and commerce within the meaning of the UTPCPL. Plaintiffs and the Class are "persons" as defined and construed under the UTPCPL.

72.     Defendant GTL's conduct as set forth herein constitutes an unconscionable, and illegal commercial practice comprised of deceptive acts or practices in violation of the UTPCPL, 73 P.S. § 201-2(xxi).

73.     Defendant has acted deceptively by unconscionably and illegally imposing unjust, unreasonable, and unfair charges  for intrastate calls.

74.     Defendant has acted deceptively by unconscionably and illegally imposing unjust, unreasonable, and unfair fees and penalties (apart from the per minute rates) for intrastate calls.

75.     Plaintiffs and the Class reasonably expected (and relied on Defendants) to ensure that they would only have to pay the legal rates for intrastate calls and would not have to incur other illicit charges that provide no commensurate benefit to them.

17

76.     Defendant's conduct as set forth herein has been unfair and in violation of the UTPCPL because the acts or practices violate established public policy, and because the harm they cause to consumers in Pennsylvania greatly outweighs any benefits associated with those practices. Plaintiffs and the Pennsylvania Class suffered actual and ascertainable losses of money or property as a result of Defendant's unconscionable, deceptive and/or unfair trade practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendant and in favor of Plaintiffs and the Class and award the following relief:

(a)     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(l), (b)(2), or (b)(3) on behalf of the Class and Pennsylvania Subclass as defined above;

(b)     Declaration, judgment, and decree that the conduct alleged herein:

- Constitutes an unreasonable and unlawful act in violation of the FCA;

- Violates the UTPCPL, and

- Unjustly enriched Defendant;

(c)     Damages to Plaintiffs and the Class to the maximum extent allowed under state and federal law;

(d)     Costs and disbursements of the action;

(e)     Restitution and/or disgorgement of Defendant's ill-gotten gains;

(f)     Pre- and post-judgment interest;

(g)     Reasonable attorneys' fees; and

(h)     Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs request a jury trial on all issues so triable.

Date: April 23, 2015                        Respectfully submitted,

                                            **KESSLER TOPAZ**
                                            **MELTZER & CHECK, P.C.**


                                            _____
                                            Peter A. Muhic (PA 73501)
                                            Edward W. Ciolko
                                            Donna Siegel Moffa
                                            Amanda R. Trask
                                            Monique Myatt Galloway
                                            280 King of Prussia Road
                                            Radnor, PA  19087
                                            Telephone: (610) 667-7706
                                            Facsimile: (610) 667-7056
                                            Email: pmuhic@ktmc.com
                                            Email: eciolko@ktmc.com
                                            Email: dmoffa@ktmc.com
                                            Email: atrask@ktmc.com
                                            Email: mgalloway@ktmc.com


                                            **LAW OFFICES OF SUSAN L. BURKE**

                                            _/s/Susan L. Burke_____
                                            Susan L. Burke
                                            1611 Park Avenue
                                            Baltimore, MD  21217
                                            Telephone: (410) 733-5444
                                            Facsimile: (410) 733-5444
                                            Email: sburke@burkepllc.com


                                            **BERGER & MONTAGUE, P.C.**

                                            _/s/ Peter R. Kahana_____
                                            Daniel Berger
                                            Peter R. Kahana
                                            Michael Y. Twersky
                                            1622 Locust Street
                                            Philadelphia, PA  19103
                                            Telephone: (215) 875-3000
                                            Facsimile: (215) 875-4604
                                            Email:danberger@bm.net
                                            Email:pkahana@bm.net
                                            Email:mitwersky@bm.net

**SALTZ, MONGELUZZI,
BARRETT & BENDESKY, P.C.**


*/s/ Patrick Howard*
Patrick Howard
Simon B. Paris
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 496-8282
Facsimile: (215) 496-0999
Email: sparis@smbb.com
Email: phoward@smbb.com


***Counsel for Plaintiffs and
The Proposed Classes***