IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EARL REESE, et al., | : | CIVIL ACTION |
| *INDIVIDUALLY AND ON BEHALF OF* | : | |
| *ALL OTHERS SIMILARLY SITUATED* | : | No. 15-2197 |
| | : | |
| v. | : | |
| | : | |
| GLOBAL TEL*LINK CORPORATION | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                       **May 31, 2016**

This is one of several lawsuits currently pending against Global Tel*Link Corporation (GTL), a provider of inmate telephone services at federal, state, and local prisons around the country, in which users of telephone systems provided by GTL challenge as unjust, unreasonable, and unfair the rates and fees the company charges for calls to and from inmates at the prisons its serves.  In this lawsuit, named Plaintiffs, a group of Pennsylvania residents who either are incarcerated in Pennsylvania prisons served by GTL or have family members in such prisons, seek to pursue claims concerning GTL's rates and fees for *intrastate* inmate calling services (ICS) on behalf of a nationwide class and a Pennsylvania subclass.  GTL's practices with respect to *interstate* ICS are the subject of a separate, consolidated class action in the Western District of Arkansas, where a later-filed parallel action regarding *intrastate* ICS is also pending against GTL.  Like this action, both of the actions pending in the Western District of Arkansas include nationwide class claims.  Following a ruling by the Judicial Panel on Multidistrict Litigation (MDL Panel) denying GTL's motion to transfer all of the pending ICS litigation to the Eastern District of Pennsylvania for coordinated pretrial proceedings, Plaintiffs ask this Court to transfer this action to the Western District of Arkansas so it may proceed in

tandem with the other ICS actions pending there. For the reasons set forth below, the motion will be granted.

## BACKGROUND

GTL and its subsidiaries provide ICS to more than a million inmates at over 2,200 correctional facilities in 48 states, pursuant to contracts with 29 states, more than 800 counties, and the Federal Bureau of Prisons. According to the Complaint, GTL, through such contracts, has acquired a monopoly over the provision of ICS at the correctional facilities it serves, enabling the company to charge unreasonably high rates and fees which vastly exceed the cost of providing service. The Complaint alleges GTL maintains its monopoly power by paying kickbacks to the contracting correctional facilities in the form of "site commissions," the cost of which GTL improperly incorporates into its rate structure for intrastate calls.

Plaintiffs assert claims against GTL under the Federal Communications Act (FCA), the common law of unjust enrichment, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), alleging GTL has violated the FCA and the UTPCPL by, inter alia, charging unjust, unreasonable, and unfair rates and fees for ICS, and has been unjustly enriched as a result of such charges. Plaintiffs seek to pursue their FCA claims on behalf of a nationwide class consisting of "all persons in the United States who, at any time since 2000, have paid to use telephone systems provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls involving a person incarcerated in any state in the United States." Compl. ¶ 43. They seek to bring their unjust enrichment and UTPCPL claims on behalf of a Pennsylvania subclass consisting of "all citizens of Pennsylvania who, at any time since 2000, have paid to use

the telephone systems provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls involving a person incarcerated in Pennsylvania."  *Id.* ¶ 44.[1]

As noted, this is one of several actions challenging GTL's rates and fees for ICS under the FCA and state law.  Two such actions are currently pending in the Western District of Arkansas and assert nationwide class claims:  (1) *In re Global Tel\*Link Corp. ICS Litigation*, No. 14-5275 (W.D. Ark. filed Sept. 4, 2014), a consolidated class action challenging GTL's rates and fees for interstate ICS,[2] and (2) *Jacobs v. Global Tel\*Link Corp.*, No. 15-5136 (W.D. Ark. filed June 12, 2015), a class action that, like this action, challenges GTL's practices with respect to intrastate ICS.[3]  A third action is currently pending against GTL in the District of New Jersey, but that action—*James v. Global Tel\*Link Corp.*, No. 13-4989 (D.N.J. filed Aug. 20, 2013)—is limited to GTL's provision of ICS at New Jersey prisons.

---

[1] Excluded from both classes are "any persons who paid to use the telephone systems provided by GTL or its subsidiaries in order to make or receive intrastate telephone calls in the State of New Jersey," as such calls are the subject of a separate action pending against GTL and certain GTL subsidiaries in the District of New Jersey.  Compl. ¶ 45 & n.17.

[2] The *In re Global Tel\*Link* action is a consolidation of three different ICS actions against GTL, one originally filed in the Western District of Arkansas, one originally filed in the Eastern District of Virginia and transferred to the Western District of Arkansas with GTL's consent, and one originally filed in the District of Minnesota, dismissed, and re-filed in the Western District of Arkansas to facilitate coordination with the other ICS actions pending there.  Plaintiffs in the consolidated action seek to pursue claims under the FCA and the common law of unjust enrichment on behalf of a nationwide class.

[3] The named plaintiffs in the *Jacobs* action are individuals who either are incarcerated in or have family members incarcerated in Arkansas and California prisons.  They seek to pursue intrastate ICS claims under the FCA and the common law of unjust enrichment on behalf of a nationwide class.  They also bring claims under the Arkansas Deceptive Trade Practices Act on behalf of an Arkansas subclass and claims under the California Business and Professions Code on behalf of a California subclass.  On May 17, 2016, the district court dismissed the *Jacobs* plaintiffs' FCA claims without prejudice.  *See* Mem. Op. & Order 5-8, *Jacobs v. Global Tel\*Link Corp.*, No. 15-5136 (W.D. Ark. May 17, 2016), ECF No. 46.

Plaintiffs filed their Complaint in this action in April 2015, shortly after the three interstate ICS actions were consolidated in the Western District of Arkansas.[4]  GTL thereafter filed a transfer motion with the MDL Panel seeking to consolidate this action, the Western District of Arkansas and District of New Jersey actions, and any future related actions in the Eastern District of Pennsylvania for pretrial proceedings, arguing consolidation would conserve the resources of the parties, their counsel, and the courts by preventing duplicative discovery and eliminating the potential for inconsistent rulings.  Plaintiffs opposed the motion, arguing formal centralization was unnecessary as the parties were already coordinating the litigation informally on their own and could achieve the benefits of centralization by transferring this action to the Western District of Arkansas, as Plaintiffs had advised GTL they were willing to do.  Alternatively, Plaintiffs argued that to the extent centralization was warranted, the cases should be consolidated in the Western District of Arkansas, given the pendency of the *In re Global Tel\*Link* and *Jacobs* actions there.

In October 2015, the MDL Panel denied GTL's motion to transfer.  Although the Panel recognized the actions GTL sought to consolidate "unquestionably share[d] factual allegations . . . and stem[med] from the same Federal Communications Commissions proceedings," the Panel agreed with Plaintiffs that "voluntary coordination [wa]s a practicable and preferable

---

[4] The Complaint in this action was filed the same day the amended consolidated class action complaint was filed in the *In re Global Tel\*Link* action.  According to Plaintiffs' counsel, who also serve as interim class counsel in the *In re Global Tel\*Link* action and represent the plaintiffs in the *Jacobs* action, this action was filed to preserve Plaintiffs' claims regarding intrastate ICS because plaintiffs in the *In re Global Tel\*Link* action had agreed their amended consolidated class action complaint would be limited to interstate ICS.  *See* Pls.' Mem. in Supp. of Mot. to Transfer 3 n.3; Mem. in Supp. of Pls.' Unopposed Mot. for Consolidation 5-6 & n.8, *In re Global Tel\*Link*, No. 14-5275 (W.D. Ark. Mar. 27, 2015), ECF No. 42-1.  Approximately seven weeks after filing this action, Plaintiffs' counsel filed the *Jacobs* action, which also concerns intrastate ICS.

alternative to centralization."  Order Denying Transfer 1, *In re Global Tel\*Link Corp. Inmate Calling Servs. Litig.*, MDL No. 2651 (J.P.M.L. Oct. 13, 2015), ECF No. 23.  The MDL Panel specifically noted Plaintiffs had offered to transfer this action to the Western District of Arkansas pursuant to 28 U.S.C. § 1404, commenting that, if such a transfer were effectuated, the bulk of the ICS litigation involving GTL would proceed in that district, with only the *James* action, with its focus on New Jersey-specific issues, proceeding in a different judicial district.  *See id.* at 2.

Following the MDL Panel's denial of GTL's motion to transfer, Plaintiffs filed the instant motion to transfer pursuant to 28 U.S.C. § 1404, consistent with their representations to the Panel.  Despite having previously urged the MDL Panel to consolidate all of the ICS actions against it in a single judicial district, and despite having consented to the consolidation of the interstate ICS actions in the Western District of Arkansas, GTL opposes the motion.

**DISCUSSION**

Under 28 U.S.C. § 1404(a), a court may, "[f]or the convenience of parties and witnesses, in the interest of justice," transfer a civil action "to any other district or division where it might have been brought."[5]  Plaintiffs, as well as defendants, may seek transfer of an action under § 1404(a).  *See Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (noting "Congress gave [plaintiffs] the power to seek a transfer in § 1404(a)").  The party seeking transfer must establish the need for transfer.  *Jumara*, 55 F.3d at 879.

In ruling on a § 1404(a) motion, a court should consider the various private and public interests implicated by the statute to determine "whether on balance the litigation would more

---

[5] Venue questions are governed by § 1404(a) when "both the original and the requested venue are proper."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995).  GTL does not dispute that venue in this action is proper both in this District and in the Western District of Arkansas.

conveniently proceed and the interest of justice be better served by transfer to a different forum."

*Id.* (citation and internal quotation marks omitted).  The salient private interests include

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted).  The public interests include

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted).

Two competing sets of considerations are particularly relevant to the transfer analysis in this case.  On the one hand, the Pennsylvania dimensions of the case weigh in favor of a Pennsylvania forum.  Named Plaintiffs are Pennsylvania residents who seek to represent a subclass composed of Pennsylvania citizens for the purpose of challenging GTL's rates and fees for intrastate calls to and from Pennsylvania prisons under Pennsylvania law.  Plaintiffs' Pennsylvania-law claims have a significant connection to this Commonwealth, and there is an obvious local interest in having these claims resolved in-state by a court familiar with the applicable law.[6]

---

[6] Of course, this case also has a national dimension, as Plaintiffs' lead cause of action is a federal FCA claim brought on behalf of a nationwide class.  Plaintiffs argue federal law issues are likely to predominate in light of a "Second Report and Order and Third Further Notice of Proposed Rulemaking" issued by the Federal Communications Commission in November 2015.  *See generally* Pls.' Reply in Supp. of Mot. to Transfer.  Earlier this month, however, the court in the *Jacobs* action dismissed the substantially similar nationwide FCA claim in that case.  *See* Mem. Op. & Order 5-8, *Jacobs v. Global Tel*Link Corp.*, No. 15-5136 (W.D. Ark. May 17, 2016),

On the other hand, considerations of judicial economy and avoidance of duplicative litigation weigh strongly in favor of transfer.[7]  As noted, GTL is currently defending two related ICS actions in the Western District of Arkansas:  the consolidated *In re Global Tel*Link* action, which was filed more than six months earlier than this action, and the *Jacobs* action, which was filed seven weeks after this action was filed.  Although GTL now argues the pendency of the *In re Global Tel*Link*  action—which focuses on interstate as opposed to intrastate ICS—"do[es] not tilt the analysis in favor of transfer," GTL's Opp'n to Mot. to Transfer 2, GTL previously recognized this action and the *In re Global Tel*Link* action "shar[e] common questions of law and fact, overlapping putative class definitions, common counsel and many of the same causes of action," including claims for unjust enrichment, GTL's Mem. in Supp. of  Mot. to Transfer 3, 14, *In re Global Tel*Link Corp. Inmate Calling Servs. Litig.*, MDL No. 2651 (J.P.M.L. June 18, 2015), ECF No. 10.  Indeed, it is precisely because of the overlap between the various interstate and intrastate ICS actions filed against it that GTL sought to consolidate all of the ICS actions,

---

ECF No. 46.  Given this ruling, the future of the FCA claim in this case is uncertain—particularly if this case is transferred to the Western District of Arkansas, as Plaintiffs request.

[7] Although not specifically mentioned in *Jumara*, these considerations are relevant to the "interest of justice" component of § 1404(a), which encompasses practical considerations that could expedite or simplify trial as well as considerations relevant to the efficient administration of the court system.  *See Thompson v. Global Mktg. Research Servs., Inc.*, No. 15-3576, 2016 WL 233702, at *5 (E.D. Pa. Jan. 19, 2016) (noting "the 'interest of justice' component of § 1404(a) . . . 'relate[s] to the efficient administration of the court system'" (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986))); *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, No. 09-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009) (noting avoidance of duplicative litigation is practical consideration that could make trial easy, expeditious, or inexpensive).  The avoidance of duplicative litigation is often the most important factor in the transfer analysis.  *See In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006); *Villari Brandes & Kline, P.C.*, 2009 WL 1845236, at *5 (noting "the presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of parties and witnesses, would suggest the opposite").

arguing it would be "more efficient to litigate these cases in a single forum." *See id.* at 2-3.  The MDL Panel also acknowledged the overlap between this action and the *In re Global Tel*Link* action, noting the actions "unquestionably share factual questions arising out of allegations that defendant GTL charges rates and fees for inmate calling services that are unjust and unreasonable, and they stem from the same Federal Communications Commission proceedings." Order Denying Transfer 1, *In re Global Tel*Link Corp. Inmate Callings Servs. Litig.*, MDL No. 2651 (J.P.M.L. Oct. 13, 2015), ECF No. 23.

This case overlaps to an even greater degree with the *Jacobs* action, as both cases concern GTL's rates and fees for intrastate ICS.  Despite the recent dismissal of the nationwide FCA claim in the *Jacobs* action, that case remains national in scope, as the *Jacobs* plaintiffs seek to pursue common law unjust enrichment claims on behalf of a nationwide class that encompasses Plaintiffs in this action.  Although this case includes a Pennsylvania statutory claim not present in the *Jacobs* action, the *Jacobs* court is already considering similar statutory claims on behalf of separate Arkansas and California subclasses.[8]  *See* GTL's Mem. in Supp. of Mot. to Transfer 14, *In re Global Tel*Link Corp. Inmate Calling Servs. Litig.*, MDL No. 2651 (J.P.M.L. June 18, 2015), ECF No. 10 (characterizing claims under different states' consumer protection statutes as overlapping).  GTL argues the pendency of the *Jacobs* action should have no impact on the transfer analysis because that case was filed after this one and Plaintiffs should not be permitted to manufacture grounds for transfer.  This argument has some force, as under the first-filed rule adopted by the Third Circuit, in cases of concurrent federal jurisdiction, ordinarily "the court which first has possession of the subject must decide it."  *EEOC v. Univ. of Pa.*, 850 F.2d

---

[8] Indeed, the court in *Jacobs* has already had occasion to apply both Arkansas and California law in resolving GTL's motion to dismiss.

969, 971 (3d Cir. 1988) (citations omitted).  The first-filed rule, however, is not to be applied mechanically; district courts have discretion to depart from the rule when circumstances justify a departure.  *See id.* at 972, 976.  The primary purpose of the rule is "to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments."  *Id.* at 977.  Although filed after this case, the *Jacobs* action has already proceeded past the motion to dismiss stage.  Moreover, the Court is persuaded the goal of coordinating all of the nationwide ICS actions in a single judicial district—which both parties endorsed before the MDL Panel (albeit with different venue preferences) and which the MDL Panel approved in principle by suggesting voluntary coordination as a preferable alternative to centralization—justifies a departure from the first-filed rule in this case.

Ultimately, regardless of how the instant transfer motion is resolved, GTL will be litigating related interstate and intrastate ICS claims in the Western District of Arkansas. Considerations of judicial economy and avoidance of duplicative litigation therefore weigh strongly in favor of transfer.  *See Ferens*, 494 U.S. at 531 (recognizing "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent" (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960))); *In re Amendt*, 169 F. App'x at 96 (recognizing "the avoidance of duplicative litigation" as an important factor in the § 1404(a) transfer analysis, as "[a]djudicating almost identical issues in separate fora would waste judicial resources"); *Villari, Brandes & Kline, P.C.*, 2009 WL 1845236, at *5 ("[W]here there is a strong likelihood of consolidation with a related action, a transfer of venue is warranted.").

The remaining public and private interest factors do not carry significant weight in this case.  While a plaintiff's original forum preference is ordinarily a "paramount consideration" in the transfer analysis, *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citation omitted), here, Plaintiffs no longer wish to proceed in their originally chosen venue.  Their alternative forum preference does not merit the same deference.  *See Palazzo v. Ciurlino*, No. 05-5093, 2006 WL 2177542, at *1 (D.N.J. July 28, 2006) ("Where it is the plaintiff seeking to transfer the case, the 'paramount consideration' given to the plaintiff's original choice of venue becomes a neutral factor." (citation omitted)).  GTL's forum preference, while entitled to some weight, likewise does not carry significant weight.  *See Leatherman v. Cabot Oil & Gas Corp.*, No. 12-3783, 2013 WL 1285491, at *3 (E.D. Pa. Mar. 29, 2013) (noting a defendant's forum choice "is entitled to considerably less weight than [p]laintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another" (quoting *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 198 (E.D. Pa. 2008))).

The convenience of parties is a largely neutral factor.  Were this the only ICS action pending against GTL, this factor would weigh against transfer, as the Eastern District of Pennsylvania is in named Plaintiffs' home state and is geographically closer to GTL's headquarters in northern Virginia than the Western District of Arkansas.  However, the pendency of the other ICS actions in the Western District of Arkansas makes it likely that it would actually be more convenient for the parties to litigate in that district only, rather than in two districts.

The convenience of witnesses is also a neutral factor in this case, as the parties have not identified any witnesses who would be unavailable for trial in either forum.  *See Jumara*, 55 F.3d at 879.  The same is true as to the location of books and records, as there is no indication the relevant documentary evidence could not readily be produced in either district.  *See id.*

Enforceability of the judgment and the public policies of the fora are not at issue here; these factors are also neutral.

Upon consideration of all of the foregoing factors, the Court is persuaded this litigation will proceed more conveniently, and the interest of justice will be better served, if this action is transferred to the Western District of Arkansas.  The parties agreed before the MDL Panel that coordination of the various ICS actions in a single district was desirable to promote efficiency. As the MDL Panel recognized, this result can largely be achieved by transferring this case to the Western District of Arkansas.  Although certain of the transfer factors weigh in favor of a Pennsylvania venue, considerations of judicial economy and avoidance of duplicative litigation weigh more heavily in favor of transfer.  Accordingly, Plaintiffs' motion to transfer will be granted.[9]

An appropriate order follows.

BY THE COURT:

_____/s/ Juan R. Sánchez_____
Juan R. Sánchez, J.

---

[9] In addition to arguing the relevant factors weigh against transfer, GTL argues Plaintiffs have failed to meet their burden to show transfer is justified because they have not identified a change in circumstances since the filing of this action warranting a change in their originally selected venue.  Although the Third Circuit has not had occasion to consider the issue, district courts in this Circuit have suggested "a plaintiff's motion for change of venue should be granted only when there are changed circumstances which have arisen since the time when the suit was instituted *or when there is some basis in the interest of justice for transfer upon balancing the various § 1404(a) factors*."  *Valido-Shade v. Wyeth LLC*, No. 12-20003, 2014 WL 4794967, at *2 (E.D. Pa. Sept. 26, 2014) (emphasis added).  As discussed above, considerations of judicial economy and avoidance of duplicative litigation provide an ample basis in the interest of justice for transfer of this case.  Moreover, insofar as a change in circumstances is necessary, the proceedings before the MDL Panel—in which the Panel resolved GTL's request that the interstate and intrastate ICS actions be coordinated in a single forum by suggesting voluntary coordination was the appropriate mechanism for this result—supply the requisite change.